J-S01032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| L.S. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| S.C. | |
| Appellee | No. 2573 EDA 2015 |

Appeal from the Order Dated July 15, 2015
In the Court of Common Pleas of Delaware County
Domestic Relations at No(s): 2009-011738

BEFORE: GANTMAN, P.J., MUNDY, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:      **FILED FEBRUARY 18, 2016**

Appellant, L.S. ("Father"), appeals from the order entered in the Delaware County Court of Common Pleas, which denied his petitions to enforce South Carolina's contempt orders against S.C. ("Mother") and to change venue. We affirm.

The relevant facts and procedural history of this case are as follows. Mother and Father are the biological parents of two children, L.T.S., born May 1997, and C.M.S., born June 1998 ("Children"). On August 22, 2003, Mother and Father divorced pursuant to a Richland County, South Carolina divorce decree, which contained a custody agreement ("Custody Agreement") entered into by consent of all parties. The Custody Agreement gave the parties shared legal custody and set forth a detailed physical custody schedule in which Mother had primary physical custody, subject to

Father's periods of partial physical custody. The Custody Agreement also stated that the parties must file all actions related to the enforcement of the Custody Agreement in Richland County, South Carolina. Following the divorce, Mother moved with Children to Delaware County, Pennsylvania.

After Father filed several rules to show cause why Mother was not in contempt of the Custody Agreement, the South Carolina court found Mother in contempt on five separate occasions. First, on September 20, 2010, the South Carolina court entered the first contempt order against Mother. In it, the court sentenced Mother to a term of six months' incarceration and instructed that Mother could purge the contempt finding by paying Father $5,000.00 by March 20, 2011. The first contempt order further stated that failure to pay this amount to Father in a timely manner would result in the issuance of a bench warrant for Mother's arrest. Next, on November 12, 2010, the South Carolina court entered the second contempt order against Mother. In it, the court sentenced Mother to a term of six months' incarceration and instructed that Mother could purge the contempt finding by paying Father $3,302.52 by May 12, 2011. The second contempt order further stated that failure to pay this amount to Father in a timely manner would result in the issuance of a bench warrant for Mother's arrest. Again, on January 5, 2011, the South Carolina court entered the third contempt order, dated January 4, 2011, against Mother. In it, the court directed the Clerk of Court to issue a bench warrant for Mother's arrest to serve a term of

six months' incarceration and instructed that Mother could purge the contempt finding by paying $1,500.00 to the Clerk of Court of Richland County, South Carolina. Then, on March 25, 2011, the South Carolina court entered the fourth contempt order against Mother. In it, the court directed the Clerk of Court to issue a bench warrant for Mother's arrest to serve a term of six months' incarceration consecutive to any previously imposed sentences for contempt. Finally, on June 7, 2011, the South Carolina court entered the fifth contempt order, dated May 31, 2011, against Mother. In it, the court sentenced Mother to a term of six months' incarceration and instructed that Mother could purge the contempt finding by paying $750.00 to the Clerk of Court of Richland County, South Carolina and $202.35 to Father within thirty days of the contempt order. The fifth contempt order further stated that failure to pay these amounts in a timely manner would result in the issuance of a bench warrant for Mother's arrest. Mother failed to satisfy any of the purge conditions contained in the contempt orders and Richland County, South Carolina issued bench warrants for Mother's arrest.

On August 22, 2011, the South Carolina court entered an order in which it relinquished jurisdiction with respect to enforcement of the Custody Agreement to Delaware County, Pennsylvania. The South Carolina court cited as its reasons for relinquishing jurisdiction, its inability to enforce the Custody Agreement and the contempt orders. Meanwhile, in Pennsylvania, Mother filed a petition to modify custody in Delaware County, Pennsylvania.

The Pennsylvania court ultimately awarded Mother sole physical and legal custody of the Children. On May 9, 2012, Richland County, South Carolina recalled its outstanding bench warrants for Mother's arrest. Then, after a hearing on May 14, 2012, the Pennsylvania court gave full faith and credit to the South Carolina contempt orders and the South Carolina order relinquishing jurisdiction to Pennsylvania by order of May 23, 2012.

On June 7, 2013, in Pennsylvania, Father filed a petition to enforce the South Carolina contempt orders against Mother. On February 24, 2014, Father filed a petition to change venue. On February 18, 2015, the Pennsylvania court issued an order in which it recused the Delaware County bench and reassigned the matter to a Chester County judge. On April 27, 2015, the Pennsylvania court held a hearing on Father's petition to enforce the South Carolina contempt orders and Father's petition to change venue. Mother did not attend the hearing. The court denied both of Father's petitions on May 27, 2015, but improperly docketed the order on May 29, 2015, to a separate docket involving the parties. On July 15, 2015, the court entered its May 27, 2015 order on the correct docket, and allowed Father to file a timely notice of appeal from that later date. On August 12, 2015, Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).

Father raises the following issues for our review:

> DID THE TRIAL COURT ERR IN *DE FACTO* VACATING THE DELAWARE COUNTY, PENNSYLVANIA ORDER OF MAY 23,

2012—WHICH CONFIRMED AND GAVE FULL FAITH AND CREDIT TO THE RICHLAND COUNTY, SOUTH CAROLINA ORDERS OF COURT DATED SEPTEMBER 20, 2010, NOVEMBER 12, 2010, JANUARY 4, 2011, MARCH 25, 2011, MAY 31, 2011, AND AUGUST 22, 2011—IN VIOLATION OF 23 PA.C.S.A. §§ 5443(A) AND (B), 5446(A), AND 5453?

DID THE TRIAL COURT ERR IN FAILING TO ENFORCE THOSE PORTIONS OF THE SOUTH CAROLINA ORDERS DATED SEPTEMBER 20, 2010, NOVEMBER 12, 2010, JANUARY 4, 2011, MARCH 25, 2011, AND MAY 31, 2011: FINDING [MOTHER] IN CIVIL CONTEMPT; SENTENCING [MOTHER] TO INCARCERATION; AND SETTING PURGE CONDITIONS, INCLUDING COMPENSATION AND RESTITUTION TO [FATHER]?

DID THE TRIAL COURT ERR IN FAILING TO FIND [MOTHER] IN CONTEMPT OF THE ORDERS DATED SEPTEMBER 20, 2010, NOVEMBER 12, 2010, JANUARY 4, 2011, MARCH 25, 2011, MAY 31, 2011[?]

DID THE TRIAL COURT ERR IN FAILING TO GRANT COUNT VII OF [FATHER'S] PETITION TO ENFORCE, WHEREIN [FATHER] INCURRED SIGNIFICANT COUNSEL FEES AND EXPENSES IN THE COURSE OF SEEKING ENFORCEMENT OF ORDERS OF COURT, AND WHERE [MOTHER] PROFFERED NO LEGALLY COGNIZABLE DEFENSE TO THE ENFORCEMENT THEREOF?

DID THE TRIAL COURT ERR IN FAILING TO GRANT COUNT VIII OF [FATHER'S] PETITION TO ENFORCE, WHERE [FATHER] REQUESTED A TRANSFER OF PHYSICAL AND LEGAL CUSTODY OF THE SUBJECT CHILDREN AS A SANCTION FOR [MOTHER'S] NONCOMPLIANCE WITH PRIOR COURT ORDERS?

(Father's Brief at 6-7).

After a thorough review of the record, Father's brief, the applicable law, and the well-reasoned opinions of the Honorable Thomas G. Gavin, we conclude Appellant's issues on appeal merit no relief. The trial court

opinions comprehensively discuss and properly dispose of those questions. (*See* Opinion in Support of Denial of Father's Petitions, filed May 29, 2015, at 5-9; Trial Court Opinion, filed September 14, 2015 at 3-6) (finding: **(issues 1-3)** Father's motivation to enforce contempt incarceration of Mother is end-run around Delaware County order, which granted Mother sole custody of Children; additionally, enforcement of South Carolina contempt orders is not permitted because South Carolina relinquished jurisdiction to Pennsylvania on August 22, 2011, and recalled bench warrants for Mother's arrest on May 9, 2012, prior to Pennsylvania's May 23, 2012 order, which gave full faith and credit to South Carolina orders; because no bench warrants existed when Pennsylvania gave full faith and credit to South Carolina orders, Pennsylvania court has no authority to arrest or incarcerate Mother; if Delaware County effectuated Mother's arrest without current bench warrants, that would result in false imprisonment of Mother; even if current bench warrants did exist, Delaware County could only detain Mother pending extradition to South Carolina; Richland County, South Carolina has indicated its lack of desire to extradite Mother based on its relinquishment of jurisdiction; further, under 42 Pa.C.S.A. § 4306(f), full faith and credit does not apply to order of contempt, which provides for term of incarceration; Father's assertion that court can enforce payment of purge money included in South Carolina contempt orders is also incorrect; time periods for payment of purge amounts have long passed and timeframe in which Mother

would face bench warrant has expired; moreover, purge amounts are not "foreign judgments" entitled to full faith and credit because they were not reduced to monetary judgments; therefore, court correctly denied Father's petition to enforce South Carolina contempt orders; **(issue 4)** court determined Mother's actions in case were not arbitrary or vexatious and do not justify order directing Mother to pay Father's counsel fees and expenses incurred in filing current petitions; court noted that Father has brought majority of petitions in this action, Mother did not bring current action before court, and Mother has not brought many petitions before court in this action; additionally, Mother's alleged willful disregard for South Carolina contempt orders is too remote in time because contempt orders are from 2010 and 2011; since that time, South Carolina has recalled bench warrants for Mother's arrest, relinquished jurisdiction, and demonstrated its unwillingness to extradite Mother; under these circumstances, there are insufficient facts to find that Mother's conduct requires imposition of attorney's fees; **(issue 5)** because court was unable to enforce South Carolina contempt orders and incarcerate Mother, transfer of custody to Father while Mother is incarcerated is moot; court also notes its discomfort with Father's attempt to use transfer of custody as sanction for civil contempt because it does not serve best interests of Children; therefore, court properly denied Father's request for transfer of custody as sanction for Mother's non-compliance with South Carolina contempt orders). Accordingly, we affirm on the basis of the

trial court's opinions.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/18/2016

# IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
## CIVIL ACTION-LAW

L.S.
**Plaintiff**

       vs.

S.C.
**Defendant**

: **DOCKET NUMBER:** 2009-011738
:                        2011-010287
:
:
:
: **IN CUSTODY**
:

L.S., Self-Represented
S.C., Self-Represented

## ORDER

**AND NOW,** this 15th *day of July, 2015* it is hereby **ORDERED** and **DECREED** that the <u>Order and Opinion</u> filed on May 29, 2015 in the above matter was filed to the docket number 2011-010287 in error and shall therefore be amended to be captioned and docketed to 2009-011738.

BY THE COURT:

_____
Thomas G. Gavin, Senior Judge





## IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
### CIVIL ACTION-LAW

L.S.
**Plaintiff**

        **vs.**

S.C.
**Defendant**

: **DOCKET NUMBER:** 2011-010287
:
:
:
:
:
: **IN CUSTODY**
:

Les Springob, Self-Represented
Susan Carney, Self-Represented

### ORDER AND OPINION

On June 7, 2013, Plaintiff/Father **L.S.** who resides at

filed a <u>Special Petition to Enforce Orders</u>

<u>Dated September 20, 2010, November 12, 2010, January 4, 2011, March 25,</u>

<u>2011, and May 31, 2011</u> seeking enforcement of five Orders entered in South

Carolina finding Defendant/Mother, **S.C.** in contempt of a custody

agreement. On February 24, 2014, Plaintiff filed a <u>Petition for Special Relief to</u>

<u>Change Venue in the Nature of a Nunc Pro Tunc Petition</u> seeking to transfer

this matter to another Pennsylvania county. A hearing was held on these

Petitions on April 27, 2015.

### Factual and Procedural History

On or about 2003, the parties were divorced by the decree of The

Honorable John M. Rucker of Richland County, South Carolina. During the

divorce action, Mother relocated with the parties two minor children, L.T.S.

and C.M.S. to Delaware County,

1

Pennsylvania. The divorce decree contained a custody agreement stating that if Father sought to change custody or modify visitation, he was to bring an action in Pennsylvania and if Mother sought to modify custody or visitation, she would bring the action in South Carolina where Father lived at the time. Father has since moved to Florida.

After issuance of the divorce decree, the parties' custody agreement became contentious resulting in open custody filings in Richland County, South Carolina and in Delaware County, Pennsylvania. After two months of communication between Richland County and Delaware County, an Order was entered on or about August 22, 2011 by Judge Morris of Richland County relinquishing jurisdiction and transferring the custody action to Delaware County. This Order was registered in South Carolina right away, but was not registered in Pennsylvania until May 14, 2012. Prior to relinquishing jurisdiction, Richland County had entered five Orders of Contempt against Mother for violating the Custody Agreement. These Orders provide as follows:

1. The Order of September 20, 2010 found Mother in contempt and sentenced her to a term of six months of incarceration and also provided that she may purge herself of the contempt by paying $5,000 to Plaintiff by 5:00p.m. on March 20, 2011. It provided that if Defendant failed to make the payment by that time, Plaintiff was to file an affidavit and thereafter a Bench Warrant would issue for the arrest and incarceration of Mother.

2

2. The Order of November 12, 2010 found Mother in contempt and sentenced her to a term of six months incarceration and also provided that she may purge herself of the contempt by paying $3,302.52 to Plaintiff by 5:00p.m. on May 12, 2011. It provided that if Mother failed to make the payment by that time, Plaintiff was to file an affidavit and thereafter a Bench Warrant would issue for the arrest and incarceration of Mother.

3. The Order of January 4, 2011 found Mother in Contempt and directed the Clerk of Court to issue a Bench Warrant for her arrest and incarceration for a term of six months. It provided a purge amount of $1500.00 to be paid to the Clerk of Court of Richland County.

4. The Order of March 25, 2011 found Mother in Contempt and sentenced her to a term of six months of incarceration consecutive to any previously issued contempt order. It directed that a Bench Warrant be issued for her arrest.

5. The Order of May 31, 2011 found Mother in Contempt and sentenced her to a term of six months of incarceration and provided a purge amount of $952.35 (some of which were to be paid to the Clerk of Courts and some paid to Father) to be paid within 30 days of service of the Order. It provided that if Mother failed to make payment by that time, Plaintiff was to file an affidavit and thereafter a Bench Warrant would issue for the arrest and incarceration of Mother.

3

ALL OF THE BENCH WARRANTS ISSUED BY RICHLAND COUNTY WERE RECALLED ON MAY 9, 2012. On May 12, 2012, after South Carolina had already recalled their Bench Warrants, Delaware County, by Order of Court, confirmed the registration of and gave full faith and credit to, the five South Carolina Orders at issue herein.

The custody matter progressed in Delaware County to a custody hearing before a Master who recommended an order awarding Mother sole legal and physical custody of the children. This recommendation became an Order of the Court two days later. Father then filed a Petition to Vacate which was denied and a Demand for Hearing De Novo which was dismissed. Father raised the issue of jurisdiction in his Petition to Vacate. The custody matter was appealed to Superior Court which issued an Opinion on November 12, 2014 affirming the Court of Common Pleas of Delaware County and remanding.

On February 18, 2015, Delaware County issued an Order recusing the Delaware County Bench, reassigning the matter to an out of County Judge, and directing that Father's <u>Special Petition to Enforce Orders Dated September 20, 2010, November 12, 2010, January 4, 2011, March 25, 2011, and May 31, 2011</u> and <u>Petition for Special Relief to Change Venue in the Nature of a Nunc Pro Tunc Petition</u> be heard. The matter was thereafter appointed to the undersigned, a Senior Judge of Chester County Pennsylvania.

Father's petitions were heard on April 27, 2015. Father represented himself. Mother did not appear. Father presented testimony and exhibits regarding his position and presented one witness as to Mother's ability to pay

4

her purge amounts. Father is nominally seeking enforcement of the South Carolina Orders sentencing Defendant to incarceration, payment of $45,415.53 to him for expenses and $2,250.00 to Richland County as payment for the purge amounts under the Orders of Contempt. However, I find as a fact that his motivation to enforce the contempt incarceration is an end run around the Delaware County Court award of sole custody of the parties children to defendant. Obviously, if she is incarcerated, he is first in line to be the children's custodian. Courts ought not facilitate end runs, especially where the trial court has been affirmed by an appellate court. Here, plaintiff is not entitled to relief for the reasons that follow.

## Statement of Law

Our Superior Court in *Standard Chartered Bank v. Ahmad Hamad Al Gosaibi & Bros. Co.*, 2014 PA Super 179, 99 A.3d 936, 940 (2014) *appeal denied*, 108 A.3d 36 (Pa. 2015) examined the laws regarding Full faith and credit explaining that the United States Constitution requires that "full faith and credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." *Id.* 2014 PA Super 179, 99 A.3d 936, 940 (2014) appeal denied, 108 A.3d 36 (Pa. 2015) This is codified by Congress in 28 U.S.C. 1738 which states in pertinent part that "Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." *Standard Chartered Bank* goes on to

5

explain that full faith and credit is "enshrined in Pennsylvania's Enforcement Act, which states:

> (b) Filing and status of foreign judgments.—A copy of any foreign judgment including the docket entries incidental thereto authenticated in accordance with act of Congress or this title may be filed in the office of the clerk of any court of common pleas of this Commonwealth. The clerk shall treat the foreign judgment in the same manner as a judgment of any court of common pleas of this Commonwealth. A judgment so filed shall be a lien as of the date of filing and shall have the same effect and be subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of any court of common pleas of this Commonwealth and may be enforced or satisfied in like manner.
>
> (f) Definition.—As used in this section "foreign judgment" means any judgment, decree, or order of a court of the United States or of any other court requiring the payment of money which is entitled to full faith and credit in this Commonwealth.

42 Pa.C.S. § 4306(b), (f)

With regard to enforcement of a custody matter, 23 Pa.C.S.A. § 5443, Duty to Enforce, provides that "A court of this Commonwealth may utilize any remedy available under other laws of this Commonwealth to enforce a child custody determination made by a court of another state." Pa.R.C.P. 1910.13-1 and Pa.R.Crim.P.150 both provide that "when an individual is arrested outside the county of issuance, the authority in charge of the county jail in the arresting county promptly shall notify the proper authorities in the county of issuance that the individual is being held pursuant to the bench warrant."

## Discussion

Special Petition to Enforce Orders Dated September 20, 2010, November 12, 2010, January 4, 2011, March 25, 2011, and May 31, 2011

6

Father in his Special Petition to Enforce Orders Dated September 20, 2010, November 12, 2010, January 4, 2011, March 25, 2011, and May 31, 2011 is seeking enforcement of five South Carolina Orders finding Mother in contempt of a custody agreement. As is mentioned above, each Order finds Mother in Contempt and either requires 1) a term of incarceration with the option to pay a set purge amount by a certain date, which is now long since passed, and if payment is not made then a Bench Warrant shall issue and Mother shall serve a term of incarceration; or, 2) the issuance of a Bench Warrant for Mother to serve the term of incarceration; or 3) the issuance of a Bench Warrant for Mother to serve a term of incarceration and a purge amount. In support of his position to have these Orders enforced, Father points to the May 21, 2012 Order issued by Judge Green of Delaware County which in pertinent part provides that the five South Carolina orders are "Confirmed, shall be given full faith and credit, and are made the Orders of this Court." I find that the enforcement of these Orders is not permitted for multiple reasons.

First, Father is asking this Court to enforce the Orders of South Carolina, which relinquished its jurisdiction of this matter to Delaware County on August 22, 2011. Richland County South Carolina recalled their bench warrants on May 9, 2012, three days prior to the issuance of Judge Green's Order giving full faith and credit to said Orders. SINCE THE BENCH WARRANTS DID NOT EXIST AT THE TIME JUDGE GREEN GAVE FULL FAITH

7

AND CREDIT TO THE ORDERS OF SOUTH CAROLINA and still do not exist, this Court has no authority to arrest and incarcerate Mother. If Delaware County were to effectuate an arrest without a current bench warrant in place, the County would essentially be falsely imprisoning Mother. Even if a bench warrant were currently in existence, Delaware County would only be permitted to detain Mother pending extradition to South Carolina. *See*, 23 Pa.C.S.A. § 5443 and 42 Pa.R.C.P. 1910.13-1. Richland County South Carolina has communicated to this Court that they have no desire to extradite Mother as they have relinquished all jurisdiction of this case to Delaware County.

Additionally, under 42 Pa.C.S. § 4306(f), full faith and credit would not apply to an Order of Contempt wherein the Defendant was sentenced to a term of incarceration. 42 Pa.C.S. § 4306 provides that a foreign judgment "shall be treated in the same manner as a judgment of any court of common pleas of this Commonwealth." However, it goes on to define in section f of 42 Pa.C.S. 4306 that a "foreign judgment means any judgment, decree, or order of a court of the United States or of any other court requiring **the payment of money** (emphasis added) which is entitled to full faith and credit in this Commonwealth." Full faith and credit therefore does not apply to an Order of Contempt providing for a term of incarceration.

This Court finds that payment of the purge amounts provided for in each Order is also not enforceable. First, three out of the five Orders provided that Mother can purge her contempt by paying a certain amount of money to the Clerk of Court or to Plaintiff by a certain date and, if she did not do so, a bench

8

warrant would issue. The time period for payment of the purge amount has long since passed as these Orders were issued between 2010 and 2011. The time period for Mother to pay the purge amount and not face issuance of a bench warrant is therefore expired. One of the five Orders provides simply for a term of incarceration with no purge amount and the final Order provides for a purge amount with no time limit stated. The purge amount in this last order, the Order dated January 4, 2011, still cannot be enforced as a purge amount issued by a Court after a finding of civil contempt is used "to coerce the defendant into compliance with the court's order." *Knaus v. Knaus*, 387 Pa. 370, 377, 127 A.2d 669, 672 (1956). Civil contempt is a way for the Court to enforce its ruling over the defendant and, since jurisdiction has been relinquished to Pennsylvania, South Carolina no longer has the ability to enforce that ruling over Mother. Also, this purge amount cannot be given full faith and credit as it was not reduced to a money judgment in order to fall within the definition of "foreign judgment" in 42 Pa.C.S. § 4306.

## Petition for Special Relief to Change Venue in the Nature of a Nunc Pro Tunc Petition

In his Petition for Special Relief to Change Venue in the Nature of a Nunc Pro Tunc Petition Father is requesting that the present matter be transferred out of Delaware County and into another Pennsylvania County. As this matter was assigned to me, a Senior Judge of Chester County, Pennsylvania, this Petition is moot.

Based on the foregoing, it is hereby

## ORDERED

Plaintiff/Father's Special Petition to Enforce Orders Dated September 20, 2010, November 12, 2010, January 4, 2011, March 25, 2011, and May 31, 2011 and Petition for Special Relief to Change Venue in the Nature of a Nunc Pro Tunc Petition are **DENIED**.

BY THE COURT:

27 May 2015
Date

_Thomas G Gavin_
Thomas G. Gavin, Senior Judge

10

# IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
## CIVIL ACTION-LAW

L.S.
**Plaintiff**

vs.

S.C.
**Defendant**

: DOCKET NUMBER: 2009-011738
:
:
: 2573 EDA 2015
:
: IN CUSTODY
:

Brian C. Vertz, Esq., Attorney for Plaintiff
S.C., Self-Represented

## OPINION

**GAVIN, S.J.**                                  **FILED:, 2015**

Appellant, L.S. (hereinafter "Father"), appeals from the Order and Opinion dated May 27, 2015 and docketed on May 29, 2015 denying his Special Petition to Enforce Orders Dated September 20, 2010, November 12, 2010, January 4, 2011, March 25, 2011, and May 31, 2011 and his Petition for Special Relief to Change Venue in the Nature of a Nunc Pro Tunc Petition. This Order was entered following a hearing held on April 27, 2015 where Father had opportunity to present evidence and testimony and to make argument.

Subsequent to the entry of the Order, on July 15, 2015, this Court entered an Order correcting the docket number under which it originally filed the Order and Opinion. The Order and Opinion was first docketed under 2011-010287 in error and was correctly filed on July 15, 2015 under

1

docket number 2009-011738. This Court, in an abundance of caution, gave Father thirty days from the date of the July 15, 2015 Order to file an Appeal. Father filed his Notice of Appeal along with a Rule 1925(b) Statement of Matters Complained of on Appeal on August 12, 2015.

Appellant's Statement raises five main issues for appeal. Those issues are summarized as follows: 1) This Court erred in de facto vacating the Delaware County, Pennsylvania Order of May 23, 2012 which confirmed and gave full faith and credit to the Richland County, South Carolina Orders of Court in violation of 23 Pa.C.S.A. 5443(A) and (B), 5446(A), and 5453; 2) This Court erred in failing to enforce those portions of the South Carolina Orders finding Appellee in civil contempt, finding Appellee in criminal contempt, sentencing appellee to incarceration, and setting purge conditions including compensation and restitution to Appellant; 3) This Court erred in failing to find Appellee in Contempt of the South Carolina Orders; 4) This court erred in failing to grant Count VII of Appellant's Petition to Enforce, wherein Appellant incurred significant counsel fees and expenses in the course of seeking enforcement of orders of court, and where Appellee proffered no legally cognizable defense to the enforcement thereof; and 5) This Court erred in failing to grant Count VIII of Appellant's Petition to Enforce where Appellant requested a transfer of physical and legal custody of the subject children as a sanction for Appellee's noncompliance with the prior court orders.

2

Upon review of Father's Statement, this Court believes that the <u>Order and Opinion</u> as well as the record as a whole fully address all issues complained of on appeal. As the reasons for the <u>Order and Opinion</u> appear of record, this Court does not believe it is required to prepare an Opinion. *See* Pa.R.A.P. 1925(a)(2)(ii). However, out of an abundance of caution, this Court will address issues four and five raised by Father as the reasons for the decisions on those issues are not as apparent in the record. This Court will not address issues one through three of Father's Statement as those issues are addressed fully in the <u>Order and Opinion</u> and the record as a whole.

The standard of review in custody appeal is well established. Our Superior Court has explained that, "In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand." *G.A. v. D.L.*, 2013 PA Super 168, 72 A.3d 264, 268 (Pa. Super 2013) "We may reject the conclusions of the trial court 'only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.'" *Id.*

3

Father contends in issue four of his Statement that this Court erred in failing to grant Count VII of Appellant's Petition to Enforce, wherein Appellant incurred significant counsel fees and expenses in the course of seeking enforcement of orders of court, and where Appellee proffered no legally cognizable defense to the enforcement thereof. In custody cases, "a court may award reasonable interim or final counsel fees, costs and expenses to a party if the court finds that the conduct of another party was obdurate, vexatious, repetitive or in bad faith." 23 Pa.C.S.A. 5339. The imposition of counsel fees is within the trial court's discretion and is reviewed under the abuse of discretion standard. *A.L.-S. v. B.S.*, 2015 PA Super 125, 117 A.3d 352, 361 (Pa. Super 2015) A Court has abused its discretion "if it failed to follow proper legal procedures or misapplied the law." *Id.* Here, Father contends that this Court erred in failing to order payment of counsel fees to Beth Hoffman, Esq., who prepared, filed, and presented his Petition for Enforcement of the South Carolina Orders.[1] In support of this contention, Father explains that Appellee/Mother acted with disregard for the law when, after the entry of the South Carolina Orders, she never paid the funds owed to him under the orders and never presented herself before the court to serve her sentences of incarceration for contempt. He states that Mother's actions were arbitrary and vexatious and caused him to have to hire Ms. Hoffman and file this petition. "A suit is

---

[1] It should be noted that Attorney Hoffman did not appear on Appellant's behalf to present argument on Father's Petition to Enforce the South Carolina Orders.

4

'vexatious,' such as would support an award of counsel fees in a child custody case, if it is brought without legal or factual grounds and if the action served the sole purpose of causing annoyance." *Id.*

This Court did not find facts sufficient to believe that Mother's actions were arbitrary or vexatious. Mother did not bring the current action before this Court. In fact, Mother has not brought many petitions before the Court at all in this action. The party who has brought many petitions to the Court including multiple Petitions for Contempt of Custody has been Father. As for Appellant's contention that Mother willfully disregarded the findings of contempt in South Carolina, those actions are too remote in time and are essentially moot here. The findings of contempt were made between 2010 and 2011. Since that time, South Carolina has recalled their warrants and relinquished jurisdiction to Pennsylvania. South Carolina has also communicated to this Court their unwillingness to extradite Mother to South Carolina if she were to be incarcerated in Pennsylvania based on contempt. Plainly, this Court does not find facts sufficient to find that Mother's conduct requires the imposition of attorney's fees in this matter.

The second and final issue that should be addressed here as it was not fully addressed in this Court's Order and Opinion is Father's issue number five which states that this Court erred in failing to grant Count VIII of Appellant's Petition to Enforce where Appellant requested a transfer of

5

physical and legal custody of the subject children as a sanction for Appellee's noncompliance with the prior court orders. As our Superior Court knows, "the purpose of a civil contempt proceeding is remedial. Judicial sanctions are employed to coerce the defendant into compliance with the court's order, and in some instances, to compensate the complainant for losses sustained." *Warmkessel v. Heffner*, 2011 PA Super 46, 17 A.3d 408, 414 (Pa Super. 2011)

In the present case, this Court did not find that it was able to enforce the Orders of South Carolina and incarcerate Mother therefore a transfer of custody to Father while Mother is serving her incarceration would be moot. This Court would like to note however that it finds Father's attempt to use the transfer of custody as a sanction for civil contempt quite discomforting. The driving force behind a custody decision is the best interests of the children. This Court does not believe that the best interests of the children would be served by using them as a sanction for either party's behavior. The children have been living with Mother in Delaware County for years now and one child has reached the age of majority. The second child will reach the age of eighteen in less than one year. This Court will not condone the attempt to use any child as a sanction especially not children who are practically adults in the eyes of the law.

**CONCLUSION**

6

For all of the reasons set forth above and in this Court's <u>Order and Opinion</u>, dated May 27, 2015, this Court respectfully submits that there has been no error or abuse of discretion and the <u>Order and Opinion</u> dated May 27, 2015 should be affirmed.

BY THE COURT:

_Thomas G Gavin_

Thomas G. Gavin, S.J.

_10 September 2015_

FILED JM
2005 SEP 14 PM 2:11
OFFICE OF
JUDICIAL SUPPORT
DELAWARE CO. PA.

7